# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

STANLEY J. ANTISKAY, JR.,

        Plaintiff,

    v.

CONTEMPORARY GRAPHICS AND
BINDERY INC., d/b/a
CONTEMPORARY GRAPHICS,

        Defendant.

_____

Civil No. 11-7579 (NLH/KMW)

**OPINION**

**APPEARANCES**:

Thaddeus P. Mikulski, Jr., Esquire
Law Offices of Thaddeus P. Mikulski, Jr.
365 White Horse Ave.
Hamilton, New Jersey 08610

    *Attorney for Plaintiff Stanley J. Antiskay, Jr.*

Peter L. Frattarelli, Esquire
Archer & Greiner. P.C.
One Centennial Square
Haddonfield, New Jersey 08033

    *Attorney for Defendant Contemporary Graphics and Bindery Inc.*

**HILLMAN, District Judge:**

    This matter comes before the Court by way of Defendant Contemporary Graphics and Bindery Inc.'s motion [Doc. No. 17] for summary judgment pursuant to Federal Rule of Civil Procedure 56. The Court has reviewed the parties' submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78.

    For the reasons expressed below, Defendant's motion will be

granted.

## I.   <u>JURISDICTION</u>

Plaintiff brings this action against Defendant Contemporary Graphics and Bindery Inc. ("Defendant" or "Contemporary Graphics") asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 <u>et seq.</u>, and the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J. STAT. ANN. § 34:19-1, <u>et seq</u>.  The Court exercises original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367.

## II.   <u>BACKGROUND</u>

Plaintiff is a former employee of Contemporary Graphics where he began working in November of 2007.  (Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J. [Doc. No. 17-6] (hereinafter, "Def.'s SOF"), ¶ 6; Pl.'s Resp. to Def.'s SOF [Doc. No. 20-4] (hereinafter, "Pl.'s Resp. SOF"), ¶ 6.)  Contemporary Graphics is "in the printing and fulfillment industry" and serves as "a one-stop, total in-house facility capable of providing: design, printing, finishing, die-cutting, warehousing, fulfilment and mailing needs to its clients." (Def.'s SOF ¶ 1; Pl.'s Resp. SOF ¶ 1.)  Plaintiff was employed in

the position of "Production Planner/Customer Service"
(hereinafter, "Production Planner") at Contemporary Graphics
until approximately July 13, 2011.  (Def.'s SOF ¶¶ 7, 13; Pl.'s
Resp. SOF ¶ 7, 13.)

Approximately five months after his employment at
Contemporary Graphics ended,[1] Plaintiff filed the complaint in
this action alleging that Contemporary Graphics owed Plaintiff
back wages for violations of the FLSA.  Plaintiff alleged that
Defendant's failed to pay Plaintiff overtime compensation at the
rate of one and one half his hourly rate for time worked over
forty (40) hours per week.  (Compl. [Doc. No. 1] ¶¶ 1, 4, 8, 10.)
Plaintiff asserts in the complaint that he is a "non-exempt
hourly employee" within the meaning of the FLSA and was entitled
to such overtime compensation, and that Defendant violated the
FLSA by failing to pay him accordingly during the three and a
half years he was employed at Contemporary Graphics.  (Id. ¶¶ 9-
14.)  Thus, Count One of Plaintiff's complaint asserts a claim
for violations of the FLSA.  (Id. ¶¶ 15-23.)

Plaintiff's complaint also alleges that he was

---

[1]    The Court notes that the parties dispute whether Plaintiff
voluntarily resigned or was constructively discharged in their
respective statements of fact.  However, because resolution of
this issue is unnecessary in the present motion for reasons set
forth more fully infra, the Court simply notes that Plaintiff's
employment with the Defendant ended on July 13, 2011.

constructively discharged in violation of New Jersey's
Conscientious Employee Protection Act as a result of his repeated
complaints to management about Defendant's failure to pay
overtime compensation. (Id. ¶ 25-30.)  Plaintiff contends that
after such complaints Defendant retaliated against Plaintiff by
requiring him to work even more overtime hours, at an increasing
rate from 2008 to 2011, without the required compensation. (Id.
¶ 27.)  Plaintiff asserts that this increased overtime workload
began having adverse effects on his health, and by July 13, 2011,
"his working conditions became so intolerable and so detrimental
to his health that [Plaintiff] was forced to resign rather than
continue to endure the adverse working conditions[.]" (Id. ¶
29.)  Thus, Plaintiff asserts he was constructively discharged in
violation of CEPA because his complaints to management lead to
adverse working conditions and his forced resignation. (Id. ¶¶
27, 30.)

## III. DISCUSSION

### A.    Summary Judgment Standard

In the present motion, Contemporary Graphics seeks the
entry of summary judgment in its favor on all of Plaintiff's
claims.  Summary judgment is appropriate where the Court is
satisfied that "'the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the

4

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." (citation omitted); see also Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing" -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof.") (citing Celotex, 477 U.S. at 325).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment may not rest upon the mere allegations or denials of the ... pleading[s.]" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (internal quotations omitted). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to

6

withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. <u>Anderson</u>, 477 U.S. at 256-57.

**B.    The Fair Labor Standards Act & Exemptions from the Act**

As the Third Circuit has explained, "[t]he FLSA establishes the general rule that 'no employer shall employ any of his employees ... for a workweek of longer than forty hours unless such employee receives compensation ... at a rate not less than one and one-half times the regular rate at which he is employed.'" <u>Sander v. Light Action, Inc.</u>, 525 F. App'x 147, 150 (3d Cir. 2013) (citing 29 U.S.C. § 207(a)(1)). Despite this general rule, "certain employees are exempted from [the FLSA's overtime] requirement, including individuals who are 'employed in a bona fide executive, administrative, or professional capacity.'" <u>Sander</u>, 525 F. App'x at 150 (citing 29 U.S.C. § 213(a)(1)).

The FLSA grants authority to the Secretary of Labor to define these exemptions by way of regulation, including the exemption for administrative employees. 29 U.S.C. § 213(a). At issue in this case is the regulation defining an "employee employed in a bona fide administrative capacity" – the so-called

administrative exemption.  See 29 C.F.R. § 541.200(a).  Section

541.200(a) provides that

> [t]he term 'employee employed in a bona fide
> administrative capacity'  ... shall mean any employee:
>
> (1)  Compensated on a salary or fee basis at a rate
>      of not less than $455 per week ..., exclusive
>      of board, lodging or other facilities;
> (2)  Whose primary duty is the performance of
>      office or non-manual work directly related to
>      the management or general business operations
>      of the employer or the employer's customers;
>      and
> (3)  Whose primary duty includes the exercise of
>      discretion and independent judgment with
>      respect to matters of significance.

The "burden of proving that a purportedly exempt employee

satisfies [these] requirements" lies with the employer.  Sander,

525 F. App'x at 150.  Accordingly, "[w]hen the moving party has

the burden of proof at trial [such as an employer proving an

FLSA exemption], that party must show affirmatively the absence

of a genuine issue of material fact: it must show that, on all

the essential elements of its case on which it bears the burden

of proof at trial, no reasonable jury could find for the non-

moving party."  In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003)

(citing United States v. Four Parcels of Real Property, 941 F.2d

1428, 1438 (11th Cir. 1991)).

In ruling on the motion for summary judgment, the Court

bears in mind that FLSA exemptions "should be construed narrowly

... against the employer[,]" and the "employer seeking to apply an exemption to the FLSA must prove that the employee ... comes '*plainly and unmistakably*' within the exemption's terms." Lawrence v. City of Phila., 527 F.3d 299, 310 (3d. Cir. 2008) (emphasis in original) (citing Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)).

## IV.  **ANALYSIS**

### A.  **Plaintiff's CEPA Claim**

Count Two of the complaint asserts a CEPA claim alleging that Defendant retaliated against Plaintiff for making complaints about Defendant's failure to pay Plaintiff overtime compensation and that ultimately Plaintiff was constructively discharged.  (Compl. [Doc. No. 1] ¶¶ 24-30.)  Contemporary Graphics argues that summary judgment should be granted in its favor on Count Two because Plaintiff's CEPA claim fails as a matter of law and because Plaintiff cannot establish a *prima facie* case under CEPA.  (Def.'s Br. in Supp. of its Mot. for Summ. J. [Doc. No. 17-7] (hereinafter, "Def.'s Br.") 16-28.)

Despite opposing Contemporary Graphics' motion for summary judgment with respect to his FLSA claim, Plaintiff makes no arguments against the entry of summary judgment with respect to his CEPA claim.  In fact, Plaintiff expressly states that he has "elect[ed] to abandon this [CEPA] claim" as alleged in Count Two

of the complaint. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ.

J. [Doc. No. 27] (hereinafter, "Pl.'s Opp'n"), 4 n.1.)

Defendant thus argues in its reply that its "motion for summary

judgment with respect to Plaintiff's CEPA claim must be

granted." (Def.'s Reply Br. in Supp. of its Mot. for Summ. J.

[Doc. No. 21] (hereinafter, "Def.'s Reply"), 1.)

The Court agrees with Defendant. Accordingly, because

Plaintiff has explicitly abandoned his CEPA claim, Defendant is

entitled to summary judgment on that claim. Durham v. Atlantic

City Elec. Co., No. 08-1120, 2010 WL 3906673, at *11 (D.N.J.

Sept. 28, 2010) (granting summary judgment in favor of defendant

on claims that were expressly abandoned by plaintiff); see also

Daughtry v. Family Dollar Stores, Inc., No. 09-5111, 2011 WL

601270, at *8 (D.N.J. Aug. 5, 2011) (granting defendant summary

judgment on NJLAD claim because plaintiff failed to respond to

defendant's argument and thus waived claim) (citing Player v.

Motiva Enters. LLC, 240 F. App'x 513, 522 n.4 (3d Cir. 2007);

cf. Skirpan v. Pinnacle Health Hosps., No. 07-1730, 2010 WL

3632536, at *6 (M.D. Pa. Apr.21, 2010) (concluding that "[w]here

a plaintiff has brought a cause of action which is challenged

through [a] motion for summary judgment as legally insufficient,

it is incumbent upon the plaintiff to affirmatively respond to

the merits of a summary judgment motion" and noting that "a

Plaintiff's failure to respond to arguments raised on summary judgment effectively constitutes an abandonment of these causes of action and essentially acts as a waiver of these issues.").

**B.  Plaintiff's FLSA Claim**

*(1)  Waiver of Administrative Exemption Affirmative Defense*

As a threshold issue, Plaintiff challenges Defendant's ability to assert the affirmative defense of the FLSA's administrative exemption by way of the pending motion for summary judgment. (Pl.'s Opp'n 4, 13-14.) Plaintiff asserts that Defendant "has[,] *for the first time* in its Motion for Summary Judgment[,] alleged that it was not required to pay Plaintiff overtime compensation pursuant to the administrative exemption of the FLSA." (Id. at 4) (emphasis added). Plaintiff argues that Defendant waived its right to assert the administrative exemption as an affirmative defense here because Defendant failed to plead this specific exemption in its Answer [Doc. No. 8]. (Id. at 13.)

Relying on Federal Rule of Civil Procedure 8(c),[2] Plaintiff argues that that a claimed exemption under the FLSA is an

---

[2]    Federal Rule of Civil Procedure 8(c) provides in pertinent part, "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: accord and satisfaction; arbitration and award; assumption of risk; contributory negligence; duress; estoppel; failure of consideration; fraud; illegality; injury by fellow servant;

affirmative defense that "must be specifically pleaded or it will be deemed waived." (Id.) Plaintiff asserts that because "Defendant did not raise the administrative exemption in its Answer and Affirmative defenses, and never moved to amend its Answer[,]" Defendant "cannot now raise the exemption *for the first time* at the summary judgment stage, and this affirmative defense should be deemed waived." (Id. at 14) (emphasis added).

Defendant concedes that it "did not plead its exemption defense in its list of affirmative defenses" in the Answer. (Def.'s Reply 2.) Defendant points out, however, that its Answer stated "several times ... that [Contemporary Graphics] believed Plaintiff was an exempt employee, and denied that Plaintiff was a non-exempt employee." (Id.) (citing Answer [Doc. No. 8] ¶¶ 9-10, 12, 14.)[3] Thus, Defendant argues, Plaintiff was "clearly put on notice that Defendant's defense to

---

laches; license; payment; release; res judicata; statute of frauds; statute of limitations; and waiver." FED. R. CIV. PRO. 8(c)(1).

[3]    Paragraph 9 provides in part, "It is denied that Plaintiff was a non-exempt employee entitled to receive overtime Pay." (Answer ¶ 9.) Paragraph 10 explains that "It is admitted only that as an exempt employee, Plaintiff did not receive overtime pay for any hours he worked over forty in a given workweek." (Id. ¶ 10.) Paragraphs 12 and 14 are identical and similarly assert that "as an exempt employee, Plaintiff was not entitled to receive overtime pay." (Id. ¶¶ 12, 14.)

his FLSA claim was that Plaintiff was an exempt employee, and therefore, [this] defense [was] not waived." (Def.'s Reply 2.)

Defendant further asserts that Plaintiff was clearly aware of Defendant's intention to argue that Plaintiff was not entitled to overtime under the FLSA because he was an exempt employee as evidenced by the fact that Plaintiff conducted discovery on this very issue. (Id. at 3.) Defendant explains that Plaintiff's document requests, dated July 12, 2012, just five months after the answer was filed, specifically requested that Defendant provide "'[a]ll documents upon which defendant relies to support its contention that plaintiff was an exempt employee not entitled to receive overtime pay.'" (Id. at 3-4) (citing Ex. B to Def.'s Reply [Doc. No. 21-1] ¶ 7.) Defendant notes that Plaintiff was questioned about his exempt status during his deposition. (Def.'s Reply 4.) Defendant also identifies a supplemental document production by Defendant which provided Plaintiff with documents that "'were copied from specific job files and reflect a sample of actions that were taken by [Plaintiff] at his discretion,'" in support of the exemption defense. (Def.'s Reply 4) (citations omitted).

Based on the notice to Plaintiff in the Answer and during discovery, and in light of Plaintiff's opportunity to conduct discovery on the exemption defense, Defendant argues that

Plaintiff did not suffer any prejudice from the fact that this defense was not specifically plead as an affirmative defense in the Answer.  (Id.)  Defendant also points out that Plaintiff "has not identified, nor even argued, any legitimate claim of prejudice in his ability to respond resulting from Defendant's failure to specifically plead the [administrative] exemption defense" in the Answer.  (Id. at 3.)

In determining whether Contemporary Graphics waived the administrative exemption defense in this case, the Court notes that Plaintiff is correct to the extent he argues that "'[t]he application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof.'"  Sander, 525 F. App'x at 150 (citing Corning Glass Works v. Brennan, 417 U.S. 188, 196–97 (1974)).  However, consideration of the purposes of Federal Rule of Civil Procedure 8(c) and the relevant case law reveals to this Court that Defendant has the better of the argument on the waiver issue.

As Defendant correctly points out, the Third Circuit has instructed district courts to "look ... at what Rule 8(c) is intended to avoid" and explained that "'[t]he purpose of requiring the defendant to plead available affirmative defenses in his answer is to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to

demonstrate why the affirmative defense should not succeed.'"

In re Sterten, 546 F.3d 278, 285 (3d Cir. 2008) (citing Robinson v. Johnson, 313 F.3d 128, 134-35 (3d Cir. 2002)).[4] Thus, "[a]s a practical matter, ... the proper focus of [the waiver] inquiry [is] ... whether, given what [Plaintiff] was already required to show, [Contemporary Graphic's] failure to raise the [administrative exemption] issue [in its Answer] specifically deprived [him] of an opportunity to rebut that defense or to alter [his] litigation strategy accordingly." In re Sterten, 546 F.3d at 285.

While it appears that the Third Circuit has not yet ruled on the precise issue of whether a FLSA exemption affirmative defense is waived if it is not specifically pled in the answer, several other Circuit Courts of Appeals have addressed this issue. Each of these Courts of Appeals has found that the technical failure to plead an FLSA exemption defense explicitly in the pleadings is not fatal to the employer's ability to assert it in the litigation and have the Court reach the merits of the defense. See, e.g., Schmidt v. Eagle Waste & Recycling,

_____

[4]     See also Ingraham v. United States, 808 F.2d 1075, 1079 (5th Cir. 1987) ("Central to requiring the pleading of affirmative defenses is the prevention of unfair surprise. A defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense.").

<u>Inc.</u>, 599 F.3d 626, 632 (7th Cir. 2010); <u>Bergquist v. Fidelity</u> <u>Information Services, Inc.</u>, 197 F. App'x 813, 815-16 (11th Cir. 2006).

In <u>Schmidt</u>, the Court of Appeals for the Seventh Circuit recognized, much like the Third Circuit does, that "[w]hile Fed. R. Civ. P. 8(c) directs parties to raise affirmative defenses in the pleadings, a delay in raising an affirmative defense only results in waiver if the other party is prejudiced as a result." 599 F.3d at 632. The Seventh Circuit concluded that the district court did not abuse its discretion in reaching the merits of the employer's administrative and combination exemption defenses to the FLSA where the employee failed to show any prejudice resulting from the employer's delay in raising the FLSA exemptions. <u>Id.</u>

The Court of Appeals for the Eleventh Circuit made similar findings in <u>Bergquist</u>. 197 F. App'x at 815-16. At the outset, the Eleventh Circuit noted that that the purpose of Rule 8(c) is "'simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate[.]'" <u>Id.</u> at 815 (citing <u>Hassan</u> <u>v. U.S. Postal Service</u>, 842 F.2d 260, 263 (11th Cir. 1988)).[5]

---

[5]   <u>See also</u> <u>Hassan</u>, 842 F.2d at 263 ("Admittedly, the general rule is that, when a party fails to raise an affirmative defense

The circumstances in Schmidt – which did not result in prejudice to the employee – are nearly identical to the circumstances of this case.    In Schmidt, the Seventh Circuit specifically recognized that the employer failed to "raise the administrative or combination exemptions explicitly in its answer."  599 F.3d at 632.  Here, Contemporary Graphics concedes this point, and the Court's review of the Answer is consistent with this concession.  (Def.'s Reply 2.)  Despite this failing, Contemporary Graphics did, like the employer in Schmidt, expressly deny that Plaintiff was a non-exempt employee, (see Answer ¶ 9), and affirmatively pled that Plaintiff was an exempt employee who was not entitled to receive overtime compensation. (Id. ¶¶ 10, 12, 14); see Schmidt, 599 F.3d at 632 (noting that employer's answer denied that plaintiff "was a covered employee under FLSA and den[ied] that [the plaintiff] was a nonexempt employee.").

Moreover, the Seventh Circuit in Schmidt observed that "[t]he nature of [the employee's] work was the primary focus of the depositions of [the president of the company] and [the

_____

in the pleadings, that party waives its right to raise the issue at trial.  However, the liberal pleading rules established by the Federal Rules of Civil Procedure apply to the pleading of affirmative defenses.  We must avoid hypertechnicality in pleading requirements and focus, instead, on enforcing the actual purpose of the rule."

17

employee]." Id. The Seventh Circuit found that the employer's "consistent position that [the plaintiff] was an exempt employee and the course of discovery as a whole should have put [the plaintiff] on notice that the administrative and combination exemptions were at issue." Id. In the present case, Plaintiff's own requests for production indicated that Plaintiff was aware that Contemporary Graphics was defending against the FLSA claim on the basis of an exemption.[6] Further, the Court's review of the depositions of Plaintiff, his supervisor Scott Schaefer, and Contemporary Graphics' President Timothy Moreton, reveals that each deposition dedicated significant amounts of time to examining the nature of Plaintiff's duties and whether he exercised independent judgment and discretion – the two contested prongs of the administrative exemption at issue.[7]

---

[6]   (See Ex. B to Def.'s Reply [Doc. No. 21-1] ¶ 7) (requesting "[a]ll documents upon which defendant relies to support its contention that plaintiff was an exempt employee not entitled to receive overtime pay.").

[7]   See also Bergquist, 197 F. App'x at 815-16 (finding no abuse of discretion in district court's consideration of FLSA exemption affirmative defense where plaintiff received interrogatories regarding and was questioned extensively during his deposition about the exemption because plaintiff had notice of the exemption defense, had the opportunity to respond, and did not argue that he was surprised or suffered any prejudice where the exemption "was a central issue of dispute between the parties" as outlined by the district court's order).

The Court finds that, as in <u>Schmidt</u> and <u>Bergquist</u>,
Contemporary Graphics took the consistent position that
Plaintiff was an exempt employee not entitled to overtime pay
under the FLSA from the filing of its Answer (where it denied
Plaintiff was a non-exempt employee), through the entire course
of discovery (where extensive discovery was taken on the issue
of Plaintiff's primary duties and ability to exercise
discretion), and up to the filing of the present motion for
summary judgment.  Plaintiff has not – at any time – made any
argument that he was prejudiced by the failure of Defendant to
explicitly plead this defense in the Answer or that he was
surprised by the assertion of this exemption.  Significantly,
even after Contemporary Graphics argued the administrative
exemption defense in its opening brief on summary judgment,
Plaintiff argued this exemption on the merits in his opposition,
and did not assert any prejudice to Plaintiff as a result.

The Court finds that a fair reading of the record supports
the premise that that Plaintiff was on notice of Defendant's
intention to pursue this affirmative defense well before it was
raised in the present summary judgment motion, particularly
where his non-exempt status was denied in the Answer and both
Plaintiff and Defendant structured their discovery strategy, in
substantial part, around this specific issue.  It is not

surprising then that Plaintiff's waiver argument does not allege that he suffered any prejudice as a result of Defendant's failure to comply with Rule 8(c).

The Court "must avoid hypertechnicality in pleading requirements and focus, instead, on enforcing the actual purpose of the [R]ule" 8(c). See Hassan, 842 F.2d at 263. Here, there is no evidence that Plaintiff was denied the opportunity to either rebut the administrative exemption defense or to alter his litigation strategy as a result of the defense being raised. See In re Sterten, 546 F.3d at 285. Accordingly, the Court concludes that in the specific circumstances of this case, the underlying purpose of Federal Rule of Civil Procedure 8(c) was satisfied and Defendant has not waived its ability to assert the administrative exemption under the FLSA as an affirmative defense to Plaintiff's claims.

(2) *Applicability of the FLSA's Administrative Exemption*

As set forth supra, "[a]n employee falls within th[e] [administrative] exemption if []he is '[c]ompensated on a salary or fee basis at a rate of not less than $455 per week,' h[is] 'primary duty' is 'directly related to the management or general business operations of the employer,' and that duty 'includes the exercise of discretion and independent judgment.'" Sander, 525 F. App'x at 150 (citing 29 C.F.R. § 541.200(a)). This

exemption must be construed narrowly, and as the employer in
this case, it is Contemporary Graphics' burden to prove that
Plaintiff "plainly and unmistakably" satisfies all three of
these requirements and is therefore an exempt employee.  See
Sander, 525 F. App'x at 150; Lawrence, 527 F.3d at 310.

### (a)  Salary Basis

As the Third Circuit recently explained, "[f]ederal
regulations provide that an individual is paid on a salary basis
'if the employee regularly receives each pay period ... a
predetermined amount constituting all or part of the employee's
compensation, which amount is not subject to reduction because
of variations in the quality or quantity of the work
performed.'"  Sander, 525 F. App'x at 150 (citing 29 C.F.R. §
541.602(a).  This means that "'the employee 'must receive the
full salary for any week in which the employee performs any work
without regard to the number of days or hours worked.'"  Sander,
525 F. App'x at 150 (citing 29 C.F.R. § 541.602(a)).  In
accordance with federal regulations, "[t]o qualify as an exempt
... administrative ... employee ..., an employee must be
compensated on a salary basis at a rate of not less than $455
per week ... exclusive of board, lodging or other facilities."
29 C.F.R. § 541.600(a); see also 29 C.F.R. § 541.602.

Defendant argues that Plaintiff received a set amount of pay each week – $1,129 per week at the time his employment ended – throughout his entire course of employment at Contemporary Graphics, without regard to the quantity or quality of his work. (See Def.'s Br. 30; Def.'s SOF ¶ 9; Pl.'s Resp. SOF ¶ 9.) In his opposition, Plaintiff concedes that he "was paid a salary of at least $455 per week" and that while the first prong of the administrative exemption has been satisfied,[8] Defendant is unable

---

[8] In his opposition, Plaintiff notes the he requested a summary of his payroll records from the period of January 1, 2009 to June 13, 2011 from a "manager" at Contemporary Graphics, Darrell Kirchmann. (Pl.'s Opp'n 8.) Plaintiff asserts that upon providing him with the payroll records, "Kirchmann informed Plaintiff that 'when [Kirchmann] went in to check the system, [Plaintiff] ... was listed not as salary, but as an hourly employee ... [and told Plaintiff] they should be paying [him] overtime, and encouraged [Plaintiff] to press that issue.'" (Id. at 9.) Plaintiff now contends that "this admission in fact suggests Defendant considered Plaintiff to be an hourly employee." (Id. at 9, 23.)

Defendant counters that Kirchmann is a "fellow co-worker" and that he was not a human resources employee, nor was he "a representative or agent authorized to speak on behalf of the company regarding" Plaintiff's status as exempt or non-exempt under the FLSA. (Def.'s Reply 9.) Defendant further argues that not only is Plaintiff's testimony regarding Kirchmann's statements inadmissible hearsay, but it also directly contradicts the record evidence that Plaintiff was paid on a salary basis. (Id.)

Kirchmann's hearsay statements, even if somehow admissible, do not raise a disputed issue of material fact with respect to whether Plaintiff was employed on a salary basis. Plaintiff does not dispute that he was paid an annual salary at a rate of $1,129 per week. (Def.'s SOF ¶ 9; Pl.'s Resp. SOF ¶ 9.) Moreover, in his opposition, Plaintiff expressly concedes that he "was paid a salary of at least $455 per week [under the

to satisfy either prong two or prong three. (Pl.'s Opp'n 16.)
Given Plaintiff's concession on this issue, the Court finds that
the first prong of the administrative exemption is satisfied
here.

### (b) Nature of Contemporary Graphics' Business

In order to evaluate the remaining two prongs of the
administrative exemption analysis – whether Plaintiff's primary
duties were directly related to the management or general
business operations of Contemporary Graphics and whether these
duties included the exercise of discretion and independent
judgment – the Court must first examine the nature of
Contemporary Graphics' business.[9] As set forth <u>supra</u>,
Contemporary graphics is a "one-stop, total in-house facility
capable of providing" its customers with services such as
design, printing, finishing, die-cutting, warehousing,

---

salary basis prong] but [that] his duties did not fall within
the requirements of either prong two or prong three of the
administrative exemption test." (Pl.'s Opp'n 16.)

[9]    In doing so, the Court notes that all of the facts set
forth regarding the nature of Contemporary Graphics' business
and its general manufacturing process are undisputed for
purposes of this motion. Accordingly, the Court cites only to
the numbered paragraphs of Defendant's Statement of Facts and in
doing so notes that the corresponding numbered paragraphs of
Plaintiff's Response Statement of Facts confirm these facts are
undisputed.

fulfillment, and mailing for projects as simple as business
cards to significantly more complex print projects. (Def.'s SOF
¶¶ 1,2.)[10] As explained in the parties' submissions, for each
prospective print product job produced by Contemporary Graphics
for a customer, "an account sales person would take [the]
proposed job to [the] estimating [department] ... to get a
quoted price on that particular job." (Id. ¶ 20.) Thereafter,
once the job was awarded to Contemporary Graphics by the
customer, Production Planners, like Plaintiff, were responsible
for converting the estimate into a so-called "job jacket."
(Id.)

The "job jacket" represents "'the Bible that the
[manufacturing] shop will follow in order to manufacture that
product.'" (Id.) (citations omitted). The "job jacket"
contains the specifications for completion of each particular
job and essentially "tells everyone how the Production Planner
expects to manufacture the job through the shop[.]" (Id. ¶ 21.)
Upon completing the "job jacket", Production Planners "put the
necessary information into the Prepress Department" which

---

[10]    Plaintiff disputes Defendant's characterization of
Contemporary Graphics as "an innovative leader" as irrelevant
and unsupported. (Pl.'s Resp. SOF ¶ 1.) The Court does not
rely on this characterization of Contemporary Graphics in
describing the general nature of its business.

"generate[s] a proof" that is then "returned to the Production Planner (Plaintiff) for approval." (Id. ¶ 22.) "Once a proof [was] approved, the Production Planner (Plaintiff) would sign off on the job jacket with the date and his initials, and then put the job jacket back into manufacturing to get printed." (Id.) From that point, the Prepress Department generated the necessary plates for the actual production of that particular job, and the plates were sent to the press room where the project would actually get printed. (Id. ¶ 23.)

After the job (also called the product) is printed (also referred to as "manufactured"), the printed product is sent to Contemporary Graphics' Bindery Department to complete any finishing instructions set forth in the job jacket. (Id. ¶ 24.) In the final stage of the manufacturing process, the printed, bound product was sent to the Shipping Department for shipment to the customer. (Id. ¶ 25.) Plaintiff's supervisor Scott Schaeffer, testified that there are separate managers for each of Contemporary Graphics' departments that are involved in the manufacturing process, including one for Bindery, one for the press room, one for prep and one for Shipping. (Dep. of Scott Schaeffer [Doc. No. 17-3], Ex. 3 to Cert. of Peter Frattarelli, Esq., 33:6-7.)

      (c)  **Primary Duty to Perform Non-Manual Work Directly**
             **Related to the Management or General Business**
             **Operations of the Employer**

The second prong of the administrative exemption delineated in Section 541.200(a) sets forth that to be employed in a bona fide administrative capacity, the employee's "primary duty" must be "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. 541.200(a)(2). The regulations further specify that to be "directly related to the management or general business operations" of the employer means that the "type of work performed by the employee" is "directly related to *assisting with the running and servicing of the business*, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 U.S.C. § 541.201(a) (emphasis added); see also Swartz v. Windstream Communications, Inc., 429 F. App'x 102, 104-05 (3d Cir. 2011) ("An employee's primary duties are directly related to his employer's management or general business operations when the employee 'perform[s] work directly related to assisting with the running or servicing of the business.'") (citing 29 U.S.C. § 541.201(a)). This type of work "includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing;

insurance; quality control; purchasing; procurement;
advertising; marketing; research; safety and health; personnel
management; human resources; employee benefits; labor relations;
public relations, government relations; computer network,
internet and database administration; legal and regulatory
compliance; and similar activities." 29 U.S.C. § 541.201(b).

In determining whether Plaintiff performed the type of work
contemplated by these regulations, the Court notes that in this
case, there are little or no material factual disputes as to the
nature of Plaintiff's primary job duties. Rather, it is the
legal consequences that flow from those facts that form the
center of the dispute between the parties.[11]  As described in
Defendant's Statement of Facts, Plaintiff's primary
responsibility as a Production Planner was to

> Independently [monitor][12] printing orders from
> customer or company sales employee from the receipt

---

[11]    The Court notes that generally disputes regarding the
nature of an employee's duties are questions of fact, but the
ultimate question of whether an employee is exempt under the
FLSA is an issue of law. See Jarrett v. ERC Properties, Inc.,
211 F.3d 1078, 1081 (8th Cir. 2000)(citing Icicle Seafoods, Inc.
v. Worthington, 475 U.S. 709 (1986)).

[12]    Plaintiff disputes Defendant's use of the word "manage" in
the description of his duties and contends that his
interpretation was that he was responsible for "monitoring"
orders as they progressed through the manufacturing process,
rather than "independently managing" them.  Because Plaintiff is
the nonmoving party here, his evidence must be "believed and all
justifiable inferences are to be drawn in his favor" and thus

27

> of specs to the invoicing of the order.  Respond to
> inquiries from internal/external customers and sales
> people to ensure satisfaction of customer needs.
> Act[] as a liaison between the client and the
> company and decide on the course of action necessary
> to assure that timelines are met and client
> expectations are satisfied.

(Def.'s SOF ¶ 26; Pl.'s Resp. SOF ¶ 26.) While Plaintiff did

"not directly supervise" any other employees, he regularly

"interacted directly with all the department managers throughout

the [manufacturing] process" and he maintained "very broad

abilities with respect to [his] work throughout the

manufacturing process."  (Def.'s SOF ¶ 27; Pl.'s Resp. SOF ¶

27.)  Plaintiff readily concedes that as a Production Planner he

did not generally perform manual labor, except for a small

percentage (less than 5%) of his time when he helped the Bindery

Department "put kits together" to make sure a product was

completed on time.  (Def.'s SOF ¶ 29; Pl.'s Resp. SOF ¶ 29.)[13]

Plaintiff testified that his job duties included, for

example: (1) receiving daily incoming calls from customers; (2)

_____

the Court substitutes the use of the word manage with the word
monitor.

[13]    While Defendant claims that Plaintiff did not perform
manual labor except on the "rare" occasion that he helped the
Bindery Department, Plaintiff disputes the use of the word
"rare" as misleading, and notes that he testified the he spent a
"small" percentage of his time doing manual labor.  (Pl.'s Resp.
SOF ¶ 29.)

receiving and replying to customer emails for printing quote
requests, new incoming projects, work-in process project updates
and confirmation of final delivery information; (3) preparing
written project estimates to submit to the Estimating Department
and emailing or faxing complete quotes back to customers on
behalf of the company; (4) converting approved quotes to active
job status in the computer system and entering additional
information specific to the project to complete the details for
proofing requirements, printing, bindery and final distribution;
(5) preparing job printing production layouts for the prepress
department; (6) attending daily production meetings to update
the status of work-in-process projects and new incoming
projects; (7) prepare job jackets for review before final
invoicing; and (8) receiving incoming billing inquires or
complaints from customers regarding their final invoicing and
redirecting them to accounting or management as necessary.
(Def.'s SOF ¶ 32(a)-32(h); Pl.'s Resp. SOF ¶ 32.)  Additionally,
Plaintiff performed the duties of a sales representative for
approximately ten percent (10%) of his accounts, and for those
accounts he was the direct contact person for the customers.
(Def.'s SOF ¶ 30; Pl.'s Resp. SOF ¶ 30.)

    It is also undisputed here that Plaintiff, among other
things: (1) processed new work to ensure specifications matched

the purchase order requirements; (2) planned jobs and entered the information into Contemporary Graphics' computer system; (3) monitored client business through the plant while it was being manufactured; (4) obtained the bindery specifications and created the necessary layouts for print jobs for purposes of the manufacturing process; (4) acted as a liaison between sales, clients, and manufacturing on his print jobs; (5) requisitioned new materials such as paper, special inks, foils, and dies; (6) entered shipping information into the computer system to ensure proper billing; (7) reviewed detailed job information on a daily basis for his projects; (8) worked with the various department to resolve issues and kept the plant manager informed on any customer services issues; and (9) worked with all department managers and team members to ensure daily compliance goals were met. (Def.'s SOF ¶ 33(a)-(u); Pl.'s Resp. SOF ¶ 33.)

Based on these largely undisputed facts, Contemporary Graphics argues that the second prong of the administrative exemption is satisfied because Plaintiff's "primary duty as [a] Production Planner was to oversee and ensure the quality and completion of customer print projects." (Def.'s Br. 30.) Defendant also points to Plaintiff's testimony that his work was predominately administrative and only a small percentage of his worked involved assisting the Bindery Department with manual

labor. (Id. at 31.) According to Defendant, Plaintiff's primary job duties were "directly related to and focused in the area of functional quality control[.]" (Id.)

In his opposition, Plaintiff relies on the so-called administrative/production dichotomy to argue that his "work was directly involved in the production of Defendant's printed products and as such his work should be considered 'production' rather than 'administrative.'" (Pl.'s Opp'n 17.) Plaintiff contends that the administrative/production dichotomy turns on whether the employee provided services or goods that constitute the employer's marketplace offerings, and that his own work "indisputably involved Defendant's 'marketplace offerings'". (Id.) Plaintiff further argues that he "did not perform any functions related to 'running the business'" but rather that he was "in Defendant's Production Department." (Id.) Plaintiff contends that he was "directly involved in the production process because he produced the 'job jacket' which was the first step needed in the creation of a final printed product" and because he created the "lay out" for the product. (Id. at 18.)

Construing this exemption narrowly, and drawing all inferences in favor Plaintiff as the nonmoving party, the Court finds that Defendant has satisfied the second prong of the administrative exemption in this case. Plaintiff himself

acknowledged that the nature of his work as a Production Planner included predominately office work and that he only performed a small amount of manual labor, less than five percent (5%), as necessary to complete projects.  With respect to whether the type of work Plaintiff performed was directly related to Contemporary Graphics Management or General Business Operations, the Court notes at the outset that Contemporary Graphics is a printing and fulfillment company which provides design, printing, finishing, die-cutting, warehousing, fulfillment and mailing services to its customers in order to generate printed products.  (Def.'s SOF ¶¶ 1-2.)

In this regard, the record reflects that Plaintiff did not actually produce these printed products.  Rather, Plaintiff assisted and serviced the actual manufacturing process by converting estimates into job jackets to initiate the production process, entering job information into the company's computer systems, approving proofs prior to commencement of manufacturing, receiving and responding to customer calls, emails, and requests, and monitoring the overall progress of products as they moved through different departments – Prepress, the Press Room, the Bindery Department, and the Shipping Department.  There is no evidence here to indicate that Plaintiff was responsible for any of the hands-on

responsibilities necessary to the physical manufacturing of the final printed product.[14]  As Defendant points out, Plaintiff merely provided oversight to the process and monitored the status of various jobs during manufacturing.  In this way, Plaintiff's primary duties constituted the type of work that serviced and assisted in Contemporary Graphics' core business — the production of printed products, and the Court finds that the second prong of the administrative exemption is satisfied here. See Swartz, 429 F. App'x at 105 (finding second prong satisfied where employer's business was the sale of telecommunication systems and the employee did not sell the systems himself but "assisted with the sales" by designing systems to meet specific customers' needs - employee thus serviced the core business).

To the extent that Plaintiff argues here that he must be considered a production worker rather than an administrative employee under the administrative/production dichotomy analysis, and thus is non-exempt under the FLSA, the Court is not persuaded by Plaintiff's argument.  As the Ninth Circuit Court of Appeals has noted, many Courts of Appeals "regard the

---

[14]    To the extent Plaintiff engaged in assisting those in the Bindery Department, this amount of hands-on involvement was minimal and constituted less than five percent (5%) of Plaintiff's overall work duties and this did not comprise his primary duty.

33

administration/production dichotomy as but one piece of the larger inquiry, recognizing that a court must 'constru[e] the statutes and applicable regulations as a whole.'" <u>Bothell v. Phase Metrics, Inc.</u>, 299 F.3d 1120, 1127 (9th Cir. 2002) (citations omitted).  Many cases "analyze the primary duty test without referencing the § 541.205(a) dichotomy at all ... because ... the dichotomy is but one analytical tool, to be used only to the extent it clarifies the analysis." <u>Id.</u>  That is, a district court should only consider the administrative/production dichotomy analysis to be determinative where the employee's "work falls squarely on the 'production' side of the line[.]" <u>Id.</u>  This is merely a tool to "be employed ... towards answering the ultimate question, whether work is 'directly related to management policies or general business operations'" rather than being considered "an end in itself." <u>Id.</u> (citations omitted).

While Plaintiff argues that his work "was directly involved in the production of Defendant's printed products" he later concedes that "the majority of [his] efforts cannot be considered actual 'production' work on the production line." (Pl.'s Opp'n 17-18.)  It is true here that Plaintiff was responsible for converting estimates for jobs into the necessary "job jacket" which contained the specifications for each

particular job and relayed information regarding how Plaintiff expected to the job to manufactured through the various departments.  (Def.'s SOF ¶¶ 20-21.)  It is also true that Plaintiff produced the layout for the product which dictated the method of actual production in the shop itself.  However, Plaintiff put this necessary information into the company's computer system and from there the entirety of producing the actual, tangible printed product was handled by each separate department at Contemporary Graphics.  It was – as Plaintiff has stressed – his job to monitor this manufacturing process once it was initiated, not to actually partake in the production itself. The Court views his role as that of a point-man who provided oversight to ensure the product progressed from one stage of manufacturing to the next.  But it is clear that Plaintiff did not, actively, produce the products.  Therefore, because Plaintiff's duties do not fall squarely on the production side of the line, the administrative/production dichotomy is not determinative in this particular case.

> **(c)  Exercise of Discretion and Independent Judgment**

The third prong of the administrative exemption requires that the employee's "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."  29 U.S.C. § 541.200(a)(3).  "Department of Labor

regulations explain that 'the exercise of discretion and independent judgment involves the comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered.'" <u>Swartz</u>, 429 F. App'x at 105 (citing 29 C.F.R. § 541.202(a)).

The regulations explain that the "exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level." 29 U.S.C. § 541.202(c). Accordingly, it is not necessary that "the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review" and "[t]he decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action." <u>Id.</u>

Factors the Court can consider in assessing whether Plaintiff's primary duties required the exercise of discretion and independent judgment include, but are not limited to:

> whether the employee has authority to formulate,
> affect, interpret, or implement management policies
> or operating practices; whether the employee carries
> out major assignments in conducting the operations
> of the business; whether the employee performs work

36

that affects business operations to a substantial
degree, even if the employee's assignments are
related to operation of a particular segment of the
business; whether the employee has authority to
commit the employer in matters that have significant
financial impact; whether the employee has authority
to waive or deviate from established policies and
procedures without prior approval; whether the
employee has authority to negotiate and bind the
company on significant matters; whether the employee
provides consultation or expert advice to
management; whether the employee is involved in
planning long- or short-term business objectives;
whether the employee investigates and resolves
matters of significance on behalf of management; and
whether the employee represents the company in
handling complaints, arbitrating disputes or
resolving grievances.

29 U.S.C. § 541.202(b).

Here, the record demonstrates that Plaintiff exercised
discretion and independent judgment with respect to matters of
significance. For instance, one such example was Plaintiff's
exercise of discretion and independent judgment was his
exclusive role in deciding on the layout for products.
Plaintiff explained that the layout consists of "the way the
pages of that document need to be positioned to print on press
so that during the finishing operation the piece can be
completed in the most efficient manner." (Dep. of Antiskay
[Doc. No. 17-2], Ex. 2 to Cert. of Peter Frattarelli, Esq.,
90:24-91:7.) Plaintiff testified that he decided the layout for
all new jobs, and noted that "if there was a problem down the

37

pike, it would be [his] fault." (Id. at 91:8-92:4.) In the Court's view, this sort of decision making process entrusted to Plaintiff constitutes the sort of circumstance where "the employee carries out major assignments in conducting the operations of the business" because Plaintiff determined the layout for all new projects and the layout was a necessary element to initiate and carry out the various stages of the manufacturing process. Mistakes in layout could result in a product needing to be "rerun" – reprinted – at Contemporary Graphics' expense.

The record also demonstrates that Plaintiff possessed the authority to commit Contemporary Graphics in matters that have significant financial impact including the requisitioning of new materials such as paper, special inks, foils, and dies necessary for various projects he was overseeing through manufacturing. (Id. 112:16-113:1.) There is also sufficient evidence here to demonstrate that Plaintiff represented the company in handling customer complaints. Plaintiff does not dispute that he received and responded to daily emails and telephone calls from customers regarding their orders, and was the point of contact to whom customers reached out to regarding bill inquires and complaints in order to get these issues resolved by accounting or management. (Def.'s SOF ¶ 32; Pl.'s Resp. SOF ¶ 32.)

In his opposition, Plaintiff makes several unconvincing arguments in support of his position that he did not exercise discretion or independent judgment in his position as a Production Planner. Specifically, Plaintiff argues in a conclusory fashion that there is no evidence he made recommendations to customers on a daily basis. (Pl.'s Opp'n 21.) He further asserts that his ability to requisition new materials did not make him an administrative employee. (Id.)

Further, Plaintiff asserts that even if his ability to requisition new materials and decide on the best method to produce a job by deciding on the layout had a "significant financial impact" on Defendant, the fact that Defendant might experience financial loss as a result is insufficient to support the conclusion that Plaintiff exercised discretion and independent judgment here. (Id.) Plaintiff also argues that whenever he "was presented with a discretionary or difficult decision, he was subject to the direction and approval" of his supervisor or the President of the company. (Id. at 22.)

The Court finds Plaintiff's arguments unconvincing. The Defendant has come forward with un-contradicted evidence, even when drawing all reasonable inferences in favor of Plaintiff, that demonstrates Plaintiff was an employee who scheduled his own daily activities, and workload, had significant customer

39

contact, and exercised discretion and independent judgment in
determining the manner of production for various products and
requisitioning new materials necessary for the production
process.

Having concluded that Defendant has satisfied all three
prongs of the administrative exemption here, the Court finds
that the uncontroverted evidence shows as a matter of law that
Plaintiff was exempt from the overtime requirements of the
FLSA.[15]  Contemporary Graphics is therefore entitled to summary
judgment on this claim.

---

[15]    In his opposition, Plaintiff argues that a representative
of the New Jersey Department of Labor Wage and Hour Division
"determined that [Plaintiff] was a non-exempt salaried employee"
and informed Defendant of Plaintiff's non-exempt status on
approximately December 1, 2011.  (Pl.'s Opp'n 9.)  Plaintiff
states that the New Jersey Wage and Hour Division concluded that
Defendant failed to pay Plaintiff overtime in violation of the
New Jersey Wage and Hour Law.  (Id.)  Plaintiff now urges this
Court to "consider the finding[s] ... of the New Jersey Wage and
Hour Division to have probative value, because the State of New
Jersey incorporates the federal regulations into its statutory
scheme."  (Id. at 23.)
        Defendant responds by noting that Plaintiff is essentially
seeking to have this Court "hold that Defendant is collaterally
estopped from arguing its administrative exemption defense" in
this case.  (Def.'s Reply 9.)  Defendant argues that the
doctrine of collateral estoppel does not apply here and that
"the auditor's findings would not have any probative value."
(Id. at 10.)  As a threshold matter, Defendant notes that the
issue here is not identical because the determination by the
Wage and Hour Division was made with regard to Plaintiff's
employment through July 2011, and that the state of New Jersey
did not adopt the federal regulation on the administrative
exemption until several months later, in September 2011.  (Id.)

Defendant argues that the "NJDOL's decision was based on the former state regulations, which were not the same as the federal regulations." (Id.)

In addition, Defendant contends that the applicability of the administrative exemption was not litigated before the New Jersey Department of Labor. (Id.) Defendant notes that "an initial letter was issued to Defendant following a brief visit from an auditor[,]" but that Defendant has "contested these findings," and no hearing has taken place so there has been no final judgment on the merits. (Id.)

At first glance, the determination by the Wage and Hour Division that Plaintiff was a non-exempt salaried employee under New Jersey's Wage and Hour Law may appear to raise an issue of material fact as to his exempt status under the FLSA. However, Defendant has argued persuasively that there is no evidence demonstrating that the federal regulations are the same as those applied by the Wage and Hour Division during its investigation. Absent evidence, not presented here, that the auditor's findings were final as a matter of state law and that in making the determination, he applied an identical regulations identical to the federal regulations, it is for this Court to independently determine, as a matter of federal law, the application of federal regulations to the undisputed facts presented here.

The Court also notes that Defendant is correct that the doctrine of issue preclusion is not applicable here and cannot be utilized to prevent Defendant from asserting the federal administrative exemption. While the Wage and Hour Division made a finding that Plaintiff was a non-exempt salaried employee under state law and assessed Defendant with a violation for its failure to pay overtime under state law, Defendant explicitly contested these findings. (See Assessment Form, Ex. E to Cert. of Peter Frattarelli [Doc. No. 21-1], 1.) In accordance with state administrative procedures, Defendant properly requested a telephone conference to discuss the contested finding and informed the Wage and Hour Division that it "contest[ed] that any wages are due because the Company disagrees with the DOL's determination that Mr. Antiskay was improperly exempt." (Id.)

Further, the record makes clear that Plaintiff opted to abandon his administrative claim with the Wage and Hour Division in order to pursue this action in federal court. (See Pl.'s Opp'n 9) (indicating Plaintiff opted to pursue this action because he was not satisfied with the final amount of recovery for overtime compensation under the State of New Jersey's formula). In these circumstances, such preliminary state

## IV.  **CONCLUSION**

For the foregoing reasons, Defendant's motion [Doc. No. 17] for summary judgment is granted.  An Order consistent with this Opinion will be entered.


Dated: December 26, 2013          s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

---

findings applying a different regulatory scheme have neither preclusive effect nor raise a material issue of disputed fact. See Kiernan v. AAA Mechanical, Inc., No. 10-4421, 2012 WL 2523040, at *3-4 (D.N.J. June 29, 2012) (denying employee's motion for summary judgment on FLSA claims and NJWHL claims after concluding that investigative findings of New Jersey Department of Labor had no preclusive effect where employee abandoned administrative claim and employer contested the findings in the first instance).